UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON DANIELS,

                    Petitioner,                         Case No. 4:14-cv-11755
                                                            Hon. Mark A. Goldsmith

v.

LORI GIDLEY,

                    Respondent.

_____/

**OPINION & ORDER**
**(1) DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS, (2)**
**DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING**
**PERMISSION TO APPEAL IN FORMA PAUPERIS**

Aaron Daniels ("Petitioner"), a Michigan prisoner, filed this action under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b), armed robbery, Mich. Comp. Laws § 750.529, assault with intent to rob while armed, Mich. Comp. Laws § 750.89, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. Petitioner was sentenced to mandatory life imprisonment for the murder convictions and lesser terms for the other offenses.

The amended petition raises eleven claims: (1) the trial court erroneously denied Petitioner's motion for substitute counsel made three weeks prior to trial, (2) the trial court erred in failing to instruct the jury on the lesser offense of voluntary manslaughter, (3) Petitioner was denied the effective assistance of appellate counsel when his appellate attorney failed to seek a remand hearing to expand the record in support of his first claim, (4) Petitioner's right to a public trial was violated when the courtroom was closed during jury selection, (5) Petitioner's trial

1

counsel was ineffective for failing to object to the closure of the courtroom, (6) the trial court engaged in prohibited ex parte communication with the jury, (7) Petitioner was abandoned by his trial and appellate counsel, (8) Petitioner was deprived of his right to appeal by the loss of transcripts, (9) the trial court erred in instructing the jury, (10) Petitioner was denied his right to present a defense by his counsel's failure to call rebuttal witnesses, and (11) Petitioner's appellate counsel was ineffective for failing to raise his state post-conviction review proceeding claims on direct appeal.

The Court will deny the petition because Petitioner's claims are without merit or barred by his state court procedural default. The Court will also deny Petitioner a certificate of appealability and deny permission to appeal in forma pauperis.

## I. BACKGROUND

Petitioner's convictions stem from the shooting death of Allen Jenkins that occurred outside a Coney Island Restaurant in Detroit on January 10, 2010.

On that date Jenkins, Rod Wilson, and Kevin Estell drove together to the MGM Grand Hotel. On their way back from the casino, Estelle received a call from Lakisha Crowley. Crowley asked to be driven home from a party. The men picked up Crowley and another young woman, Jazmine Young. Jenkins dropped Estell at his home, and then the four remaining individuals — Jenkins, Wilson, Crowley, and Young — proceeded to drive to the Coney Island Restaurant at the request of Crowley. Crowley wanted Jenkins to pick up a third young woman who said she had been sexually assaulted at the party.

Witnesses testified that the incident occurred soon after Jenkins parked his vehicle behind a green Taurus and a white Mercedes Benz near the Coney Island. 7/27/2010 Tr., Ex. 11 to Rule 5 Filing, at 190-191, 218-220 (Dkt. 28-11); 7/28/2010 Tr., Ex. 12 to Rule 5 Filing, at 9-14;

2

8/2/2010 Tr., Ex. 14 to Rule 5 Filing, at 29-32 (Dkt. 28-14). Young and Crowley got out of Jenkins' vehicle, and a group of men got out of the Mercedes and approached Jenkins' vehicle. 7/28/2010 Tr. at 15-16. According to Wilson, Petitioner's co-defendant Martez Bickham opened the door and pointed a gun at Wilson's stomach. Id. at 15-19, 22. Bickham demanded Wilson and Jenkins' belongings. Petitioner came to the other side of Jenkins' vehicle. Wilson saw Petitioner hit Jenkins on the head with a pistol. Id. at 21. Jenkins tried to drive away, but Petitioner hit him in the head a couple of more times with his gun, and then Petitioner started shooting. Id. at 24-27.

Wilson jumped out and ran behind the restaurant. Id. at 27; 8/2/2010 Tr. at 38-39. After he saw the Mercedes drive away with the men, Wilson went into the restaurant and found Jenkins on the floor bleeding from gunshot wounds to his abdomen. Jenkins later died. 7/28/2010 Tr. at 27-28; 7/27/2010 Tr. at 65.

The girls at the scene referred to the men from the Mercedes as the "Brick Boys." Based on this information, Wilson's cousin showed him photographs from her Facebook account, and Wilson identified the two assailants. 7/28/2010 Tr. at 31-36. At a subsequent photographic identification procedure at the police station, Wilson indicated that he was 60-70% sure that Petitioner was the shooter. Id. at 36-46, 8/2/2010 Tr. at 115-120.

Alexis Tyson testified that she was in the Taurus when the incident occurred. She had been at the party at a hotel with the Brick Boys earlier on that date, and she identified the people on surveillance videos taken from both the hotel and the Coney Island. She identified Petitioner, whom she knew, as the man who shot Jenkins. 7/28/2010 Tr. at 171-187. The videos from the surveillance systems were played for the jury.

Lakisha Crowley likewise testified regarding knowing the Brick Boys and attending the party. She testified to riding in Jenkins' vehicle to the Coney Island. She described the altercation in the parking lot, and she also identified Petitioner as the shooter. 8/2/2010 Tr. at 34-39.

Based on this evidence, Petitioner and his co-defendant were found guilty of the charged offenses by separate juries.

Following sentencing, Petitioner was appointed appellate counsel who filed a claim of appeal. Petitioner's brief on appeal raised two claims:

> I. Defendant-Appellant is entitled to a new trial where the trial court denied him his request for new appointed counsel.

> II. Defendant-Appellant is entitled to a new trial where the trial court denied the requested jury instruction as to the lesser offense of voluntary manslaughter.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. People v. Daniels, No. 300354, 2012 WL 4840675 (Mich. Ct. App. Oct. 11, 2012).

Petitioner then filed an application for leave to Appeal in the Michigan Supreme Court that raised the same two claims. Petitioner also included a new third claim:

> III. Appellant counsel was ineffective for failing to seek a remand for a Ginther hearing to support Argument I of his appellate brief.

The Michigan Supreme Court denied the application for leave to appeal by standard form order. People v. Daniels, 830 N.W.2d 771 (Mich. 2013).

Petitioner then commenced the present action by filing a petition for writ of habeas corpus raising the three claims that he presented to the state courts on direct appeal. He also filed a motion to stay the case so that he could return to the state courts and exhaust his remedies with respect to an additional set of claims. The Court granted the motion to stay, and it ordered Petitioner to file a motion for relief from judgment in the trial court within thirty days and then to file a motion to reopen the case within thirty days of exhausting his state court remedies.

Petitioner timely filed a motion for relief from judgment in the trial court, raising eight claims:

I. Defendant was deprived of his state and federal constitutional rights to a public trial by excluding the public from the courtroom during jury voir dire and not taking reasonable measures to accommodate public attendance.

II. Defense counsel was constitutionally ineffective when he failed to object to the closure of the courtroom to the public.

III. Defendant was deprived of his state and federal due process rights where the trial judge engaged in ex parte communications with the trier of facts without the presence of defense counsel or Defendant at a critical stage.

IV. Defendant was deprived of his state and federal constitutional rights of a defense to confront the charge of first-degree murder where trial counsel completely abandoned his client before trial and at trial because the relationship between client and counsel had completely collapsed and equally so by appellate counsel Mr. Daniel Rust.

V. Defendant was deprived of his state and federal constitutional rights of equal protection of laws where he has been prohibited of challenging his convictions of errors made or overturns his conviction in postconviction proceedings where the Michigan trial courts have not provided adequate transcripts to confront the injustice he has received.

VI. Defendant was deprived of his state and federal constitutional rights where it was error for the trial court to instruct the jury, over Defendant's objection to CJI2d 4.1.

VII. Defendant was deprived of his state and federal constitutional rights where the defendant could not rebut the testimony thus given against him because defense counsel prohibited of interviewing key prosecution witnesses, to prevent effective cross-examination to gain a conviction.

VIII. Appellate counsel provided ineffective assistance of counsel by neglecting to raise these issues on direct appeal and satisfies the "good cause" requirement.

The course of proceedings in the state court and this Court became protracted after Petitioner prematurely filed an amended habeas petition before the state trial court issued an order denying his motion for relief from judgment, and then by Petitioner's failure to appeal the trial court's eventual order denying his motion.

On August 20, 2014, Petitioner Daniels filed an amended petition, incorrectly representing that he had exhausted his new claims. This Court reopened the case to its active docket.

On February 20, 2015, Respondent filed a motion to vacate the order reopening the case, noting that the trial court had denied the motion for relief from judgment on December 1, 2014, but that Petitioner had not appealed that decision to the Michigan Court of Appeals. Petitioner acknowledged the mistake, and on March 18, 2015, he filed a motion to strike his motion to reopen the case and to reinstate the stay. The Court issued an order vacating the order reopening the case and reinstating the stay order while Petitioner completed exhaustion of his state court remedies.

Petitioner, however, had never attempted to appeal the denial of his motion for relief from judgment. Instead, on February 23, 2016, Petitioner filed a second motion for relief from judgment, raising the same issues he raised in his first motion. Petitioner asserted in the motion that he never received the December 1, 2014, order denying his first motion. That assertion, though, is belied by Petitioner's statement in his March 18, 2015 motion acknowledging the denial of his motion for relief from judgment on a date in which he still had the ability to file an appeal in the Michigan Court of Appeals.

On June 5, 2018, the trial court issued an order denying the second motion for relief from judgment on the ground that Petitioner failed to demonstrate entitlement to file a successive motion under Michigan Court Rule 6.502(G)(2). Petitioner did not attempt to appeal this order to the Michigan Court of Appeals.

Meanwhile, on April 20, 2017, Petitioner had filed a "Motion to Strike Petition for Writ of Habeas Corpus and Reinstate." The motion did not clearly state the requested relief, but it stated obliquely "defendant respectfully ask that this honorable court reinstate his appeal. And allow the defendant to properly file his said federal habeas petition." 4/20/2017 Pet. Mot. at 3 (Dkt. 14).

The Court noted that it appeared from the state court record that Petitioner never appealed the denial of his motion for relief from judgment to the Michigan Court of Appeals and the time for doing so had expired. The Court reinstated the case to the active docket, and it ordered Petitioner to file an amended petition, and the Respondent to file a responsive pleading and any additional documents contained in the state court record.

On February 26, 2018, Petitioner thereafter filed a third motion to hold his petition in abeyance so that he could yet again attempt to exhaust his state court remedies with respect to his postconviction claims. Petitioner also filed an amended petition, indicating clearly that he wished to raise in this action all the claims he raised on direct appeal and in his motion for relief from judgment.

On May 9, 2018, in answer to the motion and amended petition, Respondent filed a motion to vacate the Court's previous order reopening the case. Respondent noted that Petitioner never appealed the denial of his first motion for relief from judgment to the state appellate courts, and that the case should continue to be held in abeyance pending a renewed effort by Petitioner to pursue state appellate review.

On August 29, 2018, the Court denied Petitioner's motion to hold the amended petition in abeyance, as well as Respondent's motion to vacate its order reopening the case. The Court once again noted that Petitioner's time to appeal the order denying his first motion for relief from judgment had expired, and that Petitioner no longer had any available avenue to fully exhaust his claims. The Court ordered Respondent to file a responsive pleading to Petitioner's amended petition.

At some point the state trial court's December 1, 2014, order denying the first motion for relief from judgment was lost, and after receiving an extension of time to do so, Respondent has

to date been unable to locate a copy of the order. The parties filed motions requesting an order from this Court compelling the trial court to issue a new order denying Petitioner's first motion for relief from judgment. The Court denied the motions, noting that neither party cited any authority standing for the proposition that the Court had authority to compel the state court to reissue an order.

Thereafter, Respondent finally filed its responsive pleading as well as a copy of the relevant portions of the state court record, (Dkts. 27 and 28), and Petitioner filed a reply brief. (Dkt. 30).

The case is now ready for decision.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003), quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) quoting Williams, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011), quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103 (internal quotation omitted).

## III. ANALYSIS

### A. Substitute Counsel

Petitioner's first claim asserts that the trial court erred in failing to grant his request for substitute counsel made about three weeks prior to trial. The Michigan Court of Appeals rejected the claim on the merits during Petitioner's direct appeal:

> We have reviewed the transcripts of the several pretrial hearings during which defendant Daniels, his appointed counsel, and the court discussed the relationship between Daniels and his appointed attorney. The transcripts reveal that the trial court solicitously invited defendant Daniels on several occasions to elaborate on his complaints concerning appointed counsel, but that defendant Daniels never specified any legitimate difference of opinion between them with regard to a fundamental trial tactic. The record also fails to disclose any inadequacy of representation, or absence of diligence or disinterest by appointed counsel. People v. Ginther, 390 Mich. 436, 441-442 (1973). To the contrary, appointed counsel regularly visited defendant Daniels in jail and spent substantial time preparing for his trial. The trial court, which had some familiarity with defendant Daniels's appointed counsel, characterized him as a very competent lawyer, a point that defendant Daniels conceded more than once. The primary strain that existed between defendant Daniels and appointed counsel stemmed from their arguments attributable to defendant Daniels's emotional state. However, defendant Daniels "may not purposely break down the attorney-client relationship by refusing to

cooperate with his assigned attorney and then argue that there is good cause for a substitution." Traylor, 245 Mich. App at 462 (internal quotation and citation omitted). Furthermore, the trial court observed on several occasions that a substitution of counsel close to trial likely would prejudice defendant Daniels. And the court suggested that any substitution of counsel shortly before the trial, a date scheduled for trial with another defendant and several attorneys, likely would unreasonably disrupt the proceedings.

Accordingly, we conclude that the trial court acted within its discretion in denying defendant Daniels's request for substitute counsel.

Daniels, 2012 WL 4840675, at *2-3.

Under clearly established Supreme Court law, the body of law against which the state court adjudication of Petitioner's claim must be measured, a court reviewing the denial of substitution of counsel should consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." Martel v. Clair, 565 U.S. 648, 663 (2012). "Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." Id. at 663-664.

Clearly established Supreme Court law does not require a searching inquiry by the trial judge into the nature of a defendant's dissatisfaction with his counsel prior to denying a motion for substitution of counsel. See James v. Brigano, 470 F.3d 636, 643 (6th Cir. 2006) (reversing a grant of relief because the inquiry requirement was not clearly established by Supreme Court law). In the absence of a showing that a habeas petitioner received the ineffective assistance of counsel, a state trial judge's failure to inquire into a habeas petitioner's complaints against his counsel before denying a motion for substitution of counsel does not entitle the petitioner to habeas relief. See Peterson v. Smith, 510 F. App'x 356, 366-367 (6th Cir. 2013).

Here the record shows that a little more than three weeks prior to the start of trial,

Petitioner's trial counsel informed the court that Petitioner was requesting the appointment of a

new attorney.  7/1/2010 Tr., Ex. 5 to Rule 5 Filing, at 3.  Counsel informed the court that he was

not moving to withdraw, and he was prepared to go to trial despite Petitioner's expressed

dissatisfaction with him.  Id.  The court informed Petitioner that his counsel was prepared for trial,

had a good reputation, and that it would not adjourn the trial date.  Id.  The court inquired from

Petitioner the reason for his request.  Id.

> Petitioner explained:
>
> Mr. Freeman, he's a good lawyer and all. But I been locked up for six months. Every time he comes to see me, it's an argument. I steady asking what defense are we going to use; he states he doesn't know. I been locked up for six months. How could you not know a defense, and trial is on the 26th?
>
> * * *
>
> I don't know. I didn't realize if I got a new attorney he will still have to proceed on the 26th. But numerous other things. He done said to my family about how he feel about me, and instead of trying to help me, he is saying the way he feel. He told my mother to put the shoe on the other lady's foot; how do she feel, acting nonchalantly. She know I did this. I don't feel like going to trial with nobody like that. I'm not questioning his skills or nothing. But I don't feel right going into trial.

Id. at 5-7.

Defense counsel indicated that he was not "going against" Petitioner, but that he could not

say more because of attorney-client privilege.  Id. at 7.  The trial court denied the motion, stating:

> I'm sure your attorney does not feel that you should say anything else to the court, unless you can tell me that he had not done his job. You are pretty much telling me he has done his job, but your feelings are hurt, because of some of his opinions. I hope the two of you can talk and get a better communication going. That's all I can tell you.

Id. at 8.

Petitioner renewed his request at two subsequent pretrial hearings, but again he never made

allegations that his counsel was rendering ineffective assistance of counsel or that there was a

complete breakdown in the relationship that prevented effective representation. See 7/16/2010 Tr., Ex. 7 to Rule 5 Filing, at 5 (Dkt. 28-7) ("Again, I'm not questioning the way, you know – I don't know, his skills must be good. But with me, we can't come to no type of agreement on nothing."); 7/20/2010 Tr., Ex. 8 to Rule 5 Filing, at 7 (Dkt. 28-8) ("[Defense counsel] here he's very biased towards me and if I were to go to trial with him that would really hurt me."). Further questioning by the court on both occasions revealed that the dispute concerned Petitioner needing more time to consider a plea deal, 7/16/2010 Tr. at 5-9, and that he was upset that appointed counsel requested ten cents per page from his family for making a copy of his examination transcript and other materials, 7/20/2010 Tr. at 8-10.

A court reviewing a request for substitute counsel may consider the extent of the defendant's own responsibility for any conflict or breakdown in communication. Martel, 565 U.S. at 663. A reasonable reading of the record indicates that Petitioner was primarily responsible for the difficulties he was having with his counsel. Therefore, the record reasonably supports the determination by the Michigan Court of Appeals that the trial court did not err in denying Petitioner's motion for substitute counsel.

The trial court noted that the request was made relatively late in the process, being first made with only a few weeks remaining before the start of trial. The court allowed Petitioner to explain the reasons behind the requests, and Petitioner's responses did not suggest that his counsel was ineffective but that there were personal difficulties between counsel and Petitioner and his family members. Nor did the response suggest a complete breakdown in communication or an irreconcilable conflict between Petitioner and defense counsel. See, e.g., Henness v. Bagley, 644 F.3d 308, 321 (6th Cir. 2011) (explaining that a defendant seeking substitution of counsel must show good cause, such as a conflict of interest, a complete breakdown in communication, or an

irreconcilable conflict with his attorney). The fact that meetings between counsel and Petitioner about his first-degree murder were heated or intense is hardly surprised and not in itself an indication that substitute counsel was mandated. Given the deferential standard afforded to the trial court's decision, Martel, 565 U.S. at 663, the Michigan Court of Appeals' decision denying relief with respect to this claim was not objectively unreasonable.

Petitioner asserts in his third claim that his appellate counsel was ineffective for failing to better develop this claim on appeal by asking for a remand. Petitioner asserts that a remand hearing was necessary to demonstrate that substitute counsel was warranted on the basis that trial counsel was providing ineffective assistance of counsel. The argument fails because Petitioner failed to proffer any evidence, either to this Court or to the Michigan Supreme Court, to show that his trial counsel was ineffective for reasons not already expressed by Petitioner at the pretrial hearings. See e.g., Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998) (finding that factually unsupported or conclusory claims of ineffective assistance of counsel do not warrant habeas relief). Petitioner did not indicate to the state courts with any specificity how his trial counsel was ineffective. He did not point to any alleged failure in pretrial preparation or investigation, nor did he assert that his counsel missed any substantial line of defense. Appellate counsel was not ineffective for failing to seek a remand to support Petitioner's substitute-counsel claim.

Petitioner's first and third claims, therefore, do not warrant relief.

**B. Failure to Instruct Jury on Manslaughter**

Petitioner's second claim asserts that the trial court erred in failing to instruct the jury on the lesser offense of voluntary manslaughter. The Michigan Court of Appeals rejected this claim on the merits:

> Our review of the record reveals no evidence reasonably substantiating any adequate provocation for the shooting of the decedent. In support of defendant

Daniels's request for a voluntary manslaughter jury instruction, he proffered a defense theory grounded in anger that a Chevrolet Trailblazer driven by the decedent stopped in a Coney Island parking lot behind an old, white Mercedes driven by defendant Daniels and a Ford Taurus containing defendant Bickham. The record confirms that the decedent parked the Trailblazer behind the Mercedes and Taurus in anticipation of taking on a female passenger, but nothing in the record suggests that defendants approached the Trailblazer provoked by anger over being blocked into their parking spaces; instead, the record shows only that defendants approached the Trailblazer and confronted the decedent and robbery victim Rodrick Wilson, intending to deprive them of their property. With respect to the further defense suggestion that arguments outside the Trailblazer shortly before the shooting may have escalated tempers, some evidence showed that people who had disembarked from the Mercedes or Taurus were talking loudly or arguing, but the record reveals no evidence of any specific argument that could qualify as adequate or reasonable provocation for the robbery and shooting. Moreover, no evidence of record suggests that the decedent or Wilson possessed a firearm or any kind of weapon. Accordingly, because the record reveals no factual circumstances that would potentially allow a jury to find defendant Daniels guilty of voluntary manslaughter, the trial court properly declined to instruct the jury on voluntary manslaughter as a lesser-included offense of second-degree murder.

Daniels, 2012 WL 4840675, at *3-4.

This decision did not contravene clearly established Supreme Court law. The Supreme Court has declined to determine whether the Due Process Clause requires that a state trial court instruct a jury on a lesser included offense in a non-capital case. See McMullan v. Booker, 761 F.3d 662, 667 (6th Cir. 2014). Thus, a state trial court's failure to give the jury an instruction on a lesser included offense in a non-capital case is not contrary to, or an unreasonable application of, clearly established Supreme Court law as required for federal habeas relief. Scott v. Elo, 302 F.3d 598, 606 (6th Cir. 2002); Campbell v. Coyle, 260 F.3d 531, 541 (6th Cir. 2001). Petitioner's second claim is therefore without merit.

**C. Petitioner's Post-Conviction Review Proceeding Claims**

Petitioner's remaining claims were presented to the state trial court in his motion for relief from judgment while this proceeding was stayed. Petitioner, however, failed to appeal the denial of his motion to the Michigan Court of Appeals, and his inability to appeal that order prevents him

from ever satisfying the exhaustion requirement. The net result is that Petitioner's state post-conviction review claims are now deemed to be procedurally defaulted, and Petitioner has failed to demonstrate cause to excuse the default, barring review of these claims.

A petitioner seeking habeas corpus relief from a state court judgment must first exhaust all state remedies. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). A Michigan prisoner must raise each issue he seeks to present in his federal habeas proceeding to both the Michigan Court of Appeals and the Michigan Supreme Court to satisfy the exhaustion requirement. See Hafley v. Sowders, 902 F.2d 480, 483 (6th Cir. 1990). Petitioner did not satisfy the exhaustion requirement with respect to any of the claims raised in his motion for relief from judgment because he never appealed the denial of the motion in the state appellate courts. See Mich. Ct. R. 7.205, 7.302.

Ordinarily, a habeas petitioner who presents unexhausted claims are required to return to the state courts to satisfy the requirement. Here, however, Petitioner no longer has a procedural mechanism to satisfy the exhaustion requirement. Petitioner is time-barred from appealing the denial of his motion for relief from judgment. See Mich. Ct. R. 6.509; 7.205(F) (setting a six-month time limit for filing application for leave to appeal the denial of a motion for relief from judgment). And as the trial court noted after Petitioner attempted to re-present his claims in a second motion, state law prohibits from him starting the process over by filing a successive motion for relief from judgment presenting the same claims. See Mich. Ct. R. 6.502(G).

Because Petitioner failed to properly exhaust his habeas claims and now lacks an available remedy to do so, his claims are deemed procedurally defaulted. See Carter v. Mitchell, 693 F.3d 555, 564 (6th Cir. 2012); Martin v. Mitchell, 280 F.3d 594, 603 (6th Cir. 2002). Only by showing

cause and prejudice or that failure to review the claim would lead to a miscarriage of justice can a petitioner avoid the imposition of a procedural default. Williams v. Anderson, 460 F.3d 789, 805-806 (6th Cir. 2006) (citing Lundgren v. Mitchell, 440 F.3d 754, 763 (6th Cir. 2006)). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. See Murray v. Carrier, 477 U.S. 478, 488 (1986). To show a miscarriage of justice would result, a petitioner must make a "credible showing of actual innocence" supported by "new, reliable evidence." Davis v. Bradshaw, 900 F.3d 315, 326 (6th Cir. 2018).

Petitioner cannot establish cause to excuse his default. First, Petitioner asserts that the failure to appeal the denial of his motion for relief from judgment resulted from a lack of notice that that his motion was denied. This allegation is belied by the record. On March 18, 2015, with three months remaining to file an appeal, Petitioner filed a motion in this case to strike his motion to reopen the case and to reinstate the stay. In the motion, Petitioner indicated his knowledge that the trial court had denied his motion for relief from judgment, yet inexplicably he failed to do so. Petitioner cannot point to his pro se status or ignorance of the exhaustion requirement to establish cause. Hannah v. Conley, 49 F.3d 1193, 1197 (6th Cir. 1995) ("a petitioner's pro se status and ignorance of his rights do not constitute cause"); Bonilla v. Hurley, 370 F.3d 494, 498 (6th Cir. 2004) ("[Petitioner's] ignorance of the law and procedural requirements . . . is insufficient to establish cause to excuse his procedural default.").

Furthermore, Petitioner cannot claim that his appellate counsel's failure to raise the claims on direct appeal constitutes cause to excuse his own failure to exhaust his new claims on state post-conviction review. While ineffective assistance of appellate counsel may excuse a failure to raise the claims on direct appeal, it does not speak to or excuse Petitioner's failure to exhaust his claims

16

by appealing the denial of his motion for relief from judgment. Gadomski v. Renico, 258 F. App'x 781, 784 (6th Cir. 2007).

Finally, Petitioner has also not shown that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. See Schlup v. Delo, 513 U.S. 298, 326-327 (1995). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." Schlup, 513 U.S. at 324. Petitioner makes no such showing. Indeed, the evidence presented at trial to prove that he committed the crimes was very strong. Petitioner's state post-conviction review proceeding claims are thus barred by procedural default and do not warrant habeas relief.

As none of Petitioner's claims merit relief, the petition will be denied.

## IV. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the

resolution of Petitioner's claims because they are devoid of merit or barred by Petitioner's procedural default. The Court will therefore deny a certificate of appealability.

If Petitioner chooses to appeal the Court's decision, however, he may proceed in forma pauperis because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. CONCLUSION

Accordingly, the Court 1) denies without prejudice the petition for a writ of habeas corpus, 2) denies a certificate of appealability, and 3) grants permission to appeal in forma pauperis.

SO ORDERED.


Dated: July 22, 2019                    s/Mark A. Goldsmith
    Detroit, Michigan                    MARK A. GOLDSMITH
                                                United States District Judge